17 N.J. Super. 357 (1952)
86 A.2d 16
AUSTIN SHUSTER, PLAINTIFF-APPELLANT,
v.
THE BOARD OF EDUCATION OF THE TOWNSHIP OF HARDWICK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 17, 1951.
Decided January 18, 1952.
*358 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Wilbur M. Rush argued the cause for the appellant (Mr. Joseph W. Roseberry, attorney).
Mr. Saul N. Schechter argued the cause for the respondent (Mr. Archie Roth, attorney).
The opinion of the court was delivered by JACOBS, S.J.A.D.
This is an appeal from a judgment for the defendant entered after trial in the Law Division of the Superior Court. See Shuster v. Bd. of Education of Hardwick Tp., 8 N.J. Super. 415 (Ch. Div. 1951).
In 1880 Israel Shuster and Sarah M. Shuster, his wife, sold a half-acre of land in the Township of Hardwick to the Trustees of School District No. 78, now known as the respondent board of education. The deed of conveyance provided that the trustees and their successors shall have and hold the conveyed premises "for all such time as the same shall be used for School purposes for the advancement of any or all branches of Education and during such time for the purpose of holding all Religious Meetings, Sunday School and all charitable purposes." The deed provided further that when the premises shall cease to be used for school purposes for the advancement of education, the trustees or their successors shall, within a year, be privileged to remove improvements and the premises shall then revert to the grantors, their heirs and assigns.
In due course the Spring Valley School House was erected on the premises and regular classroom instruction was conducted there for many years. Apparently because of dwindling enrollment and difficulties in obtaining a teacher the respondent board of education, following a referendum held in the township on February 13, 1946, closed the Spring *359 Valley School insofar as instruction therein was concerned and arranged for transportation of its pupils to the Blairstown Public School. Although the school building no longer houses any regular school teachers and pupils it has not been abandoned; it has been maintained substantially intact and in good repair and has been heated when necessary; monthly meetings of the respondent board of education are held there; regular meetings of the local 4-H club are held there; public elections including school elections are conducted there; and meetings of civic or public organizations are held there periodically.
The plaintiff as the son and heir of Israel Shuster and Sarah M. Shuster instituted his action below for possession of the premises, asserting that since the closing of the school in 1946 the premises have not been used for school purposes for the advancement of education. The respondent board of education answered that the plaintiff was not entitled to possession on the ground, among others, that the premises have never ceased to be used for school purposes for the advancement of education within the contemplation of the 1880 deed. At the close of the trial the plaintiff moved for judgment and the court dismissed the jury, apparently with the consent of the parties, and reserved decision. Thereafter it filed a formal opinion which embodied its finding that the premises had never ceased to be used for school purposes for the advancement of education and directed the entry of judgment for the defendant. The plaintiff has duly appealed.
It is well settled that when a condition in a deed is relied upon to defeat an estate it should be strictly construed and its violation must be clearly established. Board of Education v. Brophy, 90 N.J. Eq. 57, 62 (Ch. 1919); Sunshine Park, Inc., v. Gulvin, 21 N.J. Misc. 282, 286 (Sup. Ct. 1943); Mills v. Evansville Seminary, 58 Wis. 135, 15 N.W. 133, 134 (1883); Crane v. Inhabitants of Hyde Park, 135 Mass. 147, 149 (1883). Invoking the foregoing principle, many courts have held that a condition limiting the use of conveyed premises to school purposes is not violated by the *360 cessation of classroom instruction where the school premises are not being abandoned but are to be used for purposes which are broadly related to the community's public educational system or needs. See Koonz v. Joint School Dist., 256 Wis. 456, 41 N.W.2d 616 (1950); Board of Education v. Hunter, 190 Ga. 767, 10 S.E.2d 749 (1940); McCullough v. Swifton Consolidated School District, 202 Ark. 1074, 155 S.W.2d 353 (1941); Crane v. Hyde Park, supra; Mills v. Evansville Seminary, supra. See also Board of Education v. Brophy, supra, at page 63, where Vice-Chancellor Lewis, in discussing the analogous issue before him, pointed out that:
"While the evidence shows that the school building is not at present being actually used for school sessions, there is no evidence to establish the fact that the school district has actually abandoned the property for school purposes. Circumstances might arise at any time which would induce the present board of education to utilize the building and grounds actively for school purposes; or a succeeding board, with different policies, and, perhaps, under changed conditions, might put it in active operation. It might be utilized for a manual training shop, or a kindergarten, or a special school for defective pupils, or a domestic science school and kitchen, * * *."
Cf. Gage v. School District No. 7 in Boscawen, 64 N.H. 232, 9 A. 387 (1887). In the Koonz case school sessions were discontinued and the children were transported to school in another community; the court upheld the right of the school authorities to retain and use the premises as a park and playground for the children. In the Hunter and McCullough cases new school houses were being built; the court in the first instance upheld the right of the school authorities to use the old building to house school teachers temporarily and in the other instance to use the old premises as a waiting station for the school children.
In the instant matter the 1880 deed contained no language limiting the use of the premises to the actual operation of a school or the conduct of school sessions; on the contrary, it embodied designedly broad phraseology conveying the premises for such time as they are used for "School purposes for the advancement of any or all branches of Education *361 and during such time for the purposes of holding all Religious Meetings, Sunday School and all Charitable purposes." Although regular school sessions are not now being conducted at the Spring Valley School House it has not been abandoned but has been maintained in good condition and available for school use. When the school sessions were terminated in 1946 there were only 18 pupils in the township; now there are 39 and, as was pointed out in the Brophy case, regular school sessions may hereafter be resumed or the school house may be used for specialized or supplementary instruction. In the meantime the school house is being used for some purposes which appear to us to fall directly within the uses contemplated by the deed. Thus, the monthly meetings of the board of education are held there; during these meetings the board considers what steps shall be taken for the advancement of the educational interests of the children in the township and fixes controlling policies. Similarly, regular meetings of the local 4-H club, during which certain educational interests of township children are advanced, are held there. See Organizing 4-H Club Work, Miscellaneous Publication No. 320 (U.S. Dep't. Agric. 1948) 2:
"4-H Club work is a specialized educational enterprise for rural youth. As such, it shares in the objectives common to all educational institutions and movements in its concern with the development of individual abilities and capacities for learning, intellectual and moral character, qualities of effective citizenship, and the like * * *."
Finally, the conduct of school elections might well be deemed a school purpose for the advancement of education; and the other incidental purposes for which the school house is now being used are civic or public involving no private gain and may be deemed charitable in nature. Cf. Mirinda v. King, 11 N.J. Super. 165 (App. Div. 1951).
In the light of the foregoing we are satisfied that the plaintiff has not established that the Spring Valley School House has ceased to be used for purposes contemplated by *362 the 1880 deed; accordingly, we need not at this time consider the several additional grounds which have been advanced by the respondent board of education in support of the judgment entered below.
Affirmed.